Entered on Docket September 18, 2013

**Below is the Order of the Court.**



_____
**Brian D. Lynch
U.S. Bankruptcy Judge
(Dated as of Entered on Docket date above)**

_____

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re: | Case No. 13-43771-BDL |
| DAVID ALAN PERMAN and | **MEMORANDUM DECISION DENYING CHAPTER 13 CONFIRMATION** |
| MARY DEE PERMAN, | |
| Debtors. | |

The debtors David and Mary Dee Perman proposed a first amended chapter 13 plan dated July 23, 2013. It provided under paragraph IV "Distribution of Plan Payments," under the subheading "Attorney's Fees" that "[p]re-confirmation attorney fees and costs shall not exceed $4000." Local Bankruptcy Rule 2016-1(e)(1) allows a

1

ORDER DENYING CONFIRMATION

presumptive fee of $3500 through confirmation without the necessity of an application for compensation. It is referred to in the chapter 13 world as a "no-look" fee. If counsel has contracted with the debtor to provide services on an hourly basis and the hourly fees exceed the presumptive fee for work through confirmation, counsel may request fees in excess of the presumptive fee by motion within 21 days of confirmation. This request must be "accompanied by an itemized breakdown of time… in the form and manner required by Local Bankruptcy Rule 2016-1(f)." Local Bankruptcy Rules 2016-1(e)(2) and 2016-1(i).

The trustee has objected not to the amount of fees, but how the debtors propose to pay the fees. Following the provision concerning the amount of fees sought, there is a form provision which spells out options for payment of those fees. The debtors chose option d.: "Other: See paragraph XII(d)." Paragraph XII is titled "Additional Case-Specific Provisions." Subparagraph d. provides:

> After payments to vehicle creditors and on-going mortgage payments provided that prior to disbursement of on-going mortgage payments, the trustee shall set aside at least $2,230 (the balance due on the presumptive attorney fee) to be paid to Debtor's counsel upon confirmation or dismissal.

The Chapter 13 trustee objected to this provision and to paragraph XII(a), which provides that "[a]ny refund to Debtor upon dismissal or discharge shall be disbursed through Debtor's counsel." The trustee's concern was that the provisions violate 11 U.S.C. § 349(b)(3), which states that upon dismissal property of the estate revests in the entity in which such property was vested immediately prior to the commencement of the case. The trustee in particular objects to the extent that the trustee is required to pay the debtors' attorney a fee which has not been earned or awarded.

In the case of a preconfirmation dismissal, the simple answer is that since this is a plan provision only operative if a plan is confirmed, the provision is not binding and the statutory scheme under section 349 is not thwarted. But if the plan is confirmed, and the

2

case is dismissed before fees are awarded or disbursed, then this provision would conflict with section 349(b)(3), because that section requires that funds be paid to the debtor upon dismissal. *In re Nash*, 765 F.2d 1410, 1415 (9th Cir. 1985).

The Court has a broader concern with this provision, which it voiced at the hearing on the objection. Specifically, paragraph XII(d) of this plan primes the payment of postpetition ongoing mortgage payments in order to pay the debtors' counsel fees up to the presumptive fee. It provides that payments to the ongoing mortgage do not commence until the $2230 is "set aside to be paid to Debtor's counsel upon confirmation ...." Debtors, or to be more accurate, debtors' counsel, argue that no statutory provision requires that ongoing postpetition mortgage payments on a residence be paid at or prior to administrative claims.

There are two problems with this proposed plan provision. First, residential mortgages have been subject to unique treatment in bankruptcy ever since 1978, when sweeping changes were enacted to Chapter 13. 11 U.S.C. § 1322(b)(2) provides that a plan may modify the rights of holders of secured claims, "other than a claim secured only by a security interest in real property that is the debtor's principal residence...." This so-called "anti-modification" language is subject to Section 1322(b)(5) which allows: "(5) [the plan may] … provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured or secured claim...."

If the plan provides for curing a default on a residential mortgage obligation, there is the issue of whether payment of attorney's fees which interrupts the ongoing postpetition mortgage payment violates §§ 1322(b)(2) and 1322(b)(5). *In re Perez,* 339 B.R. 385, 402 (Bankr. S.D. Tex. 2006); *In re Fernandez,* 2011 WL 1404891, at *10 (Bankr. S.D. Tex., Apr. 13, 2011); *In re Collins,* 2007 WL 2116416, at *12 (Bankr. E.D. Tenn., July 19, 2007). However, inasmuch as the mortgagee did not raise this issue, the Court will refrain from addressing it *sua sponte*.

3

ORDER DENYING CONFIRMATION

The Court's greater concern has to do with the effect of this provision on debtors. Irrespective of whether this plan provision violates the requirements of section 1322(b), the fact is that this provision and others proposing to pay attorney's fees prior to postpetition mortgage payments benefit the attorney for the debtors to the detriment of the debtors themselves.

From the debtors' perspective, the practical effects of such a provision are (1) to add postpetition mortgage payments to the mortgage delinquency which the debtors must cure over the life of the plan; (2) to likely result in additional postpetition late charges being assessed on the account until the trustee starts disbursing the payments; (3) to often cause the mortgagee to object to the plan specifically because of this or similar provisions, resulting in attorney's fees incurred by the mortgage creditor, ultimately added to the mortgage arrearage the debtors must pay; and (4) to increase the risk of a motion for relief from stay from the mortgagee due to defaults on postpetition mortgage payments, which at the least results in more attorney's fees incurred by both creditor and debtors, all of which are usually paid by the debtors.[1]

Debtors' attorney argues that failure to pay the fees "early in the case will result in debtors having less access to competent counsel and increase the burden on the bankruptcy system." This assertion is unsupported by any evidence or empirical support. And in fact, what empirical evidence there is, seems to contradict this assertion. While BAPCPA accelerated a trend to having trustees administer ongoing mortgage payments

---

[1] *See In re Lynch*, 109 B.R. 792, 796 (Bankr. W.D.Tenn. 1989)(" the earlier plan payments begin, the less opportunity for post-petition mortgage arrearages to arise and the less opportunity for other defaults in secured plan payments to result").

4

on delinquent mortgages in chapter 13 plans, still something on the order of 34% of trustees do not administer the ongoing mortgage payments.[2]

In those venues where trustees do not administer the ongoing mortgage payments, the debtor is responsible for paying the ongoing mortgage payment directly from the outset of the case. Even here in Western Washington, if the mortgage(s) is current at filing, the debtor may and usually does make direct payments on the obligation from the very outset of the case, effectively priming the debtor's attorney fees. Local Bankruptcy Rule 3015-1(j). Paying postpetition ongoing mortgage payments from the outset of a bankruptcy and ahead of attorney's fees has not seemed to have any effect on obtaining competent counsel in cases where the mortgage payments are being paid directly by a debtor.

Nationally, the amount distributed to pay debtors' attorney's fees has dramatically increased over the last ten years. In fiscal year 2003, chapter 13 trustees disbursed to debtors' attorneys $347,487,639 of total disbursements of $4,197,608,806 (8.3%). In fiscal year 2012, the total disbursements by chapter 13 trustees to debtors' attorneys were $688,513,428, of a total of $7,154,888,234 (9.6%) in disbursements.[3]

For the fiscal year ending September 30, 2012 in this district alone, chapter 13 trustees disbursed $ 9,783,786 in debtor's attorney's fees on total disbursements of $ 160,710,118 (6.1%), an increase of 157% from the $3,806,949 in attorney's fees disbursed in 2003. There are many reasons for this increase in total amount of attorney's

---

[2] According to Department of Justice Chapter 13 Trustee statistics for FY 2012, 53 out of 182 trustees made no disbursements and 9 made only de minimis disbursements toward ongoing mortgage payments. The Court has defined "de minimis" for purposes here as less than $20,000 in annual disbursements to ongoing mortgage payments. http://www.justice.gov/ust/eo/private_trustee/data_statistics/ch13.htm.

[3] *Id*.

5

ORDER DENYING CONFIRMATION

fees disbursed, including an increased number of pending cases and the increased requirements BAPCPA imposed on chapter 13 cases. But given the amount of fees awarded in those cases for work through confirmation and supplemental fees awarded postconfirmation, it is disingenuous to suggest that the bar would somehow abandon debtors if the fees of counsel are not allowed to prime the ongoing mortgage payment.

Counsel also argues that there is a "longstanding local practice" of "folding" two postpetition mortgage payments into the prepetition mortgage arrears due to the delay in the chapter 13 trustee making the original plan payments and disbursements. In this Court's experience, it is not true that there is a standard practice during that time frame concerning payment of the debtor's attorney's fees from those plan payments. In fact, many attorneys have filed and continue to file plans which do not seek to prime the ongoing mortgage to pay their fees. When the plan proposes to pay the fees "prior to all creditors," the mortgage creditor often objects to such provisions, and the debtor's counsel then provides otherwise in an amended plan or makes some other agreement with the residential mortgagee. Paragraph XII(d) is merely debtor's counsel's latest effort to rebalance the interests of counsel and the ongoing mortgage as to those initial plan payment proceeds. The Court is motivated to try to deal with this issue in a systematic way given the lack of consistency among debtors and mortgagees, and given its concern that the debtor is not really a party in this negotiation.

Counsel also argues that if payment of debtors' attorney's fees is delayed to pay the ongoing mortgage, the likelihood of plan failure will increase because there will be less postconfirmation legal help available to debtors trying to save a plan. Again, this statement is unsupported by any hard evidence or empirical studies. Moreover, its logic is suspect. The converse seems at least as likely, i.e., if debtor's counsel has been paid in full at the outset, there may be even less reason to fight off efforts to dismiss the case, if, as is not uncommon, the debtor defaults at some point during the plan. As noted above,

6

counsel can and very often do apply for additional fees for services provided postconfirmation.

Counsel also argues that the "mortgage modification debacle" and "foreclosure crisis" have exacerbated the problem of getting retainers and emergency filings. This argument, again unsupported by any evidence, empirical or otherwise, strikes the Court as a red herring. The phenomenon of debtors filing chapter 13 cases right before foreclosure sales goes back to the early 1980's, when Chapter 13 became the stratagem of choice for debtors delinquent on their mortgages. Similarly, the problem of getting retainers to do chapter 13 work is not new, and in light of the increase in fees disbursed to the debtors' attorneys, does not appear to have adversely affected the volume of chapter 13 bankruptcy filings.

What has changed over time are the number of courts and trustees which pay the ongoing mortgage payment "inside" the plan, i.e., through the trustee's office. Less than half of trustees in 2000 (36%)[4] administered ongoing mortgage payments, and now more than two-thirds of trustees (66%) administer them.[5]

While there are a number of benefits to having a trustee handle ongoing mortgage payments, this scramble about who gets paid first from the plan payments, the debtor's attorney or the mortgagee, is not one of them. The facile answer to this problem is that the debtor should pay both the fees incurred by counsel, which are administrative claims,

---

[4] According to Department of Justice Chapter 13 Trustee statistics for FY 2000, 101 out of 187 trustees made no disbursements and 18 made only de minimis disbursements toward ongoing mortgage payments.
http://www.justice.gov/ust/eo/private_trustee/data_statistics/ch13.htm. Statistics for this year are categorized ordering data in a slightly different manner than is the case for FY 2012, and so these results should not be considered an exact comparison.

[5] *See supra*, note 2.

*and* the ongoing mortgage payments from the outset. In truth, however, only a minority of debtors have the funds available to pay all the postpetition mortgage payments as they accrue *and* the debtor's attorney's fees in full at confirmation.

If the trustee is required to pay the ongoing mortgage payment before paying the debtor(s)' attorney, no doubt the risk increases somewhat that a certain percentage of cases will be dismissed before counsel is paid in full. By the same token, even without a provision such as paragraph XII(d), administrative claims, including claims for debtor attorney fees, still enjoy priority over distributions to mortgage arrearage cure payments, and priority and nonpriority unsecured claims.

What is required is a balancing of the interests of the attorney for the debtor, the residential mortgagee and the debtor.

The problem with the proposed paragraph XII(d) is that it focuses on paying the debtor's counsel to the detriment of the ongoing mortgage payment, placing the risk of delayed payment or nonpayment on the residential mortgagee and the debtor. The primary purpose of chapter 13 cases with delinquent mortgages is to save the home but proposed paragraph XII(d) actually enhances the risk to the homeowner. The Court holds that if an objection is raised to a provision such as paragraph XII(d) in a plan which proposes to cure the debtor(s)' residential mortgage arrearage, a proper compromise balancing the interests of the mortgagee, the debtor's counsel, and most importantly the debtor, would provide as follows:

> *From funds paid by the debtor in the first sixty days from the date of filing, the trustee shall set aside the amount of one ongoing mortgage payment for any mortgage on the debtor's residence which the debtor proposes to pay through the trustee, and shall continue to do so each monthly plan payment thereafter until confirmation or court order, at which point said reserved mortgage payments shall be disbursed. Except as provided otherwise in the plan, the original fees of debtor(s)' counsel will be paid up to the presumptive fee upon confirmation **after***

8

ORDER DENYING CONFIRMATION

*the reserved funds are disbursed to the residential mortgagee, provided that the payment of the fees not interrupt payment of the mortgage payments accruing postconfirmation. If the debtor's counsel seeks additional original fees, they may be paid postconfirmation after said fees are approved by the Court from funds available after paying the ongoing mortgage payments.*[6]

Regarding the objection of the chapter 13 trustee to the provisions in Paragraph XII(d), the trustee shall not pay fees of counsel for the debtor if the case is dismissed absent a further court order, although the refund to the debtor may be returned through the attorney's office.

Consistent with this ruling, confirmation of the debtors' current plan is denied. The debtors have fourteen (14) days to propose an amended plan. If no amended plan is filed within that period, the Chapter 13 Trustee may present an order dismissing the case.

/// End of Order ///

---

[6] This assumes that the plan does not provide for any other plan payments prior to or at the same time as the debtor's attorney fees. In the extant case, the plan proposes to pay the "vehicle creditors" prior to the debtors' fees, which would need to be incorporated into this provision.

9